# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 9:17-cr-80102-ROSENBERG

UNITED STATES OF AMERICA,

    v.

MICHAEL C. BROWN,

    Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART OFFICER BROWN'S MOTION FOR JUDGMENT OF ACQUITTAL

**This Cause** is before the Court on Officer Brown's Motion for Judgment of Acquittal, DE 190 & 191. The Government responded, DE 214, and Officer Brown replied, DE 216. The Court held a hearing on January 24, 2018. The Court hereby grants in part and denies in part Officer Brown's Motion for Judgment of Acquittal in that a Judgment of Acquittal will be entered as to Count Two but not as to Count One.

### I. FACTS

On August 20, 2014, Officer Michael Brown and other members of the Boynton Beach Police Department attempted to perform a traffic stop of a vehicle. The driver of the vehicle did not stop the car but instead led the officers on a high-speed chase. After the vehicle was stopped, several Boynton Beach Police Officers, including Officer Brown, used force against the occupants of the vehicle. Specifically, Officer Brown used force against the front-seat passenger, J.B.

In a Superseding Indictment, Officer Brown was charged with (1) depriving another of a constitutionally protected right while acting under color of law, resulting in bodily injury (Count One); (2) using and carrying a firearm during and in relation to a crime of violence, the offense charged in Count One (Count Two); and (3) falsifying a document with intent to obstruct a

governmental investigation (Counts Three and Six). DE 81.

Following a jury trial, Officer Brown was convicted of Counts One and Two and acquitted of Counts Three and Six. *See* DE 161. Officer Brown has now filed a Motion for Judgment of Acquittal, DE 190 & 191.

## II. MOTION FOR JUDGMENT OF ACQUITTAL

The standard for a Federal Rule of Criminal Procedure 29(c) Motion for Judgment of Acquittal is as follows:

> In considering a motion for the entry of a judgment of acquittal, a district court must view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. The prosecution need not rebut all reasonable hypotheses other than guilt. The jury is free to choose between or among the conclusions to be drawn from the evidence presented at trial, and the district court must accept all reasonable inferences and credibility determinations made by the jury. The District Court's determination that the evidence introduced at trial was insufficient to support the jury's verdict of guilt is [an] issue of law entitled to no deference on appeal.

*United States v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005) (citation omitted).

In his Motion for Judgment of Acquittal, Officer Brown makes the following arguments: (1) Judgment of Acquittal should be entered as to Count One because there was insufficient evidence of excessive force or willfulness; and (2) Judgment of Acquittal should be entered as to Count Two because Count One is not a predicate crime of violence.[1] DE 191.

   a. Count One

At trial, Officer Brown was convicted of Count One, a violation of 18 U.S.C. § 242 with bodily injury. The jury was instructed that the elements they had to find beyond a reasonable doubt

---

[1] Officer Brown also argues that Judgment of Acquittal should be entered as to Count Two because the Government failed to introduce sufficient evidence for the jury to conclude that a "firearm" was used or carried during and in relation to Count One. DE 191. The Court does not reach this argument.

were: (1) that the Defendant acted under color of law; (2) that the Defendant deprived the victim, J.B., of rights secured and protected by the Constitution or laws of the United States; in this case, the right to be free from unreasonable seizure by one acting under color of law; (3) that the Defendant acted willfully; and (4) that the offense resulted in bodily injury to J.B. DE 155 at 16.

Officer Brown argues that Judgment of Acquittal should be entered as to Count One because the Government presented insufficient evidence of excessive force or willfulness. According to Officer Brown, the sole evidence of his use of force was a videotape introduced as Government Exhibit 3 and the testimony of Officer Patrick Monteith. DE 191 at 2. Officer Brown argues that Sedrick Aiken, the Government's use-of-force expert, and Jeffrey Katz, the Government's witness and the Chief of the Boynton Beach Police Department, testified that, based on what they observed on the video alone, they could not rule out that Brown's actions were reasonable and proper. *Id.* at 3. Officer Brown argues that the Government introduced no evidence to rebut these scenarios and presented no evidence of Officer Brown's willfulness. *Id.* The Government responds that it presented sufficient evidence for a reasonable jury to conclude that Officer Brown's actions were unreasonable when weighing the force employed by Officer Brown against the resistance of the passenger, J.B. DE 214 at 2–3.

The Court agrees with the Government. In viewing the evidence in the light most favorable to the Government, the Government presented sufficient evidence for a reasonable jury to conclude that Officer Brown used excessive force and acted willfully. The Government presented evidence that Officer Brown was faced only with passive resistance and, thus, could respond only with soft force, Trial Tran., Nov. 2, 80–81; therefore, a jury could conclude that Officer Brown's use of hard force, including punches and kicks, was unreasonable. Similarly, as the Government argues, a reasonable jury could conclude that Officer Brown did not fully disclose his actions in his written

report, demonstrating consciousness of guilt, DE 214 at 5; and a reasonable jury could conclude that the evidence that Officer Brown received training on his departmental policy regarding excessive force and that he violated that policy demonstrated willfulness, *see United States v. Rodella*, 804 F.3d 1317, 1338 (10th Cir. 2015) (finding that evidence that the defendant attended departmental training was relevant to showing defendant's willfulness in violating departmental policy). Therefore, Officer Brown's conviction for Count One stands.

   b. Count Two

At trial, Officer Brown was convicted of Count Two, a violation of 18 U.S.C. § 924(c)(1)(A)(i). The jury was instructed that the elements they had to find beyond a reasonable doubt were: (1) that the Defendant committed the violent crime charged in Count One of the Superseding Indictment; and (2) that during and in relation to that violent crime, the Defendant knowingly used a firearm, as charged in the Superseding Indictment. DE 155 at 22. Officer Brown argues that Count One could not serve a predicate crime for Count Two because it does not meet the definition of "crime of violence" as defined in 18 U.S.C. § 924(c)(3). The Court agrees.

A crime of violence under § 924(c)(3) is defined as "an offense that is a felony and (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[2] These clauses have been called the "use-of-force" clause and the "risk-of-force" clause. *See Ovalles v. United States*, 861 F.3d 1257, 1259 (11th Cir. 2017). "In construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of the term 'crime of violence.' The ordinary

---

[2] This definition is the same as the generic definition of crime of violence found in the criminal code at 18 U.S.C. § 16(b).

meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent active crimes." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (quoting *Leocal v. Aschcroft*, 543 U.S. 1, 11 (2004)).

To determine if an offense qualifies as a crime of violence under either the use-of-force or risk-of-force clause, the Court must look categorically at the statute that is the basis for the predicate crime of conviction—"that is, by reference to the elements of the offense, and not the actual facts of [the defendant's] conduct." *United States v. McGuire*, 706 F.3d 1333, 1336 (11th Cir. 2013) (citation omitted). Put simply, the Court must determine if the elements of the crime of conviction satisfy either prong of the definition of crime of violence under 18 U.S.C. § 924(c)(3).

    i.   <u>18 U.S.C. § 242 is Divisible.</u>

Before the Court analyzes whether an offense satisfies either the use-of-force or the risk-of-force clause, the Court first must determine what the crime of conviction was. This requires the Court to determine whether the statute that serves as the basis for the predicate offense is indivisible or divisible. If "a statute sets out a single (or 'indivisible') set of elements to define a single crime", the Court applies the "categorical approach." *Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016). Some statutes, however, define multiple crimes by listing multiple "alternative elements." *Id.* at 2249. To analyze these "divisible" statutes, the Court employs the "modified categorical approach." *Id.* The modified categorical approach requires the Court to look at "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of. The court can then compare that crime, as the categorical approach commands, with the relevant generic offense." *Id.*

5

As the parties agree, 18 U.S.C. § 242 is divisible.[3] The parties disagree, however, about how many offenses are contained in § 242: the Government argues that there are three offenses, DE 214 at 6–7,[4] whereas Officer Brown argues that there are seven, DE 191 at 10–11.[5] Relevant

---

[3] Section 242 reads:
> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

[4] According to the Government, the offenses in § 242 are:
> (1) Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both;
> (2) if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and
> (3) if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

[5] According to Officer Brown, the offenses in § 242 are:
> (1) Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by

to the Court's analysis are the first two clauses. The first clause, which reads "[w]hoever, under color of any law . . . subjects any person . . . to the deprivation of any rights. . ." contains the base offense; the second clause increases the statutory maximum penalty "if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire." Officer Brown argues that the second clause contains two separate offenses: (1) bodily injury resulting ("the Bodily Injury Offense") and (2) use, attempted use, or threatened use of a dangerous weapon, explosives, or fire ("the Dangerous Weapon Offense"). DE 191 at 10–11. The Government argues that the second clause of § 242 contains only one offense that can be proven disjunctively. DE 214 at 8.

The Court agrees with Officer Brown's reading of the statute and concludes that that the second clause of § 242 lists two offenses. "A single statute may list elements in the alternative, and thereby define multiple crimes." *Mathis*, 136 S.Ct. at 2249. "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.' At trial, they are what the jury must find beyond a reasonable doubt to convict the defendant." *Id.* at 2248 (citations omitted). Because the Government must prove either that "bodily injury result[ed]" *or* that "the acts include the use, attempted use, or threatened use of a dangerous

---

reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both;
(2) if bodily injury results from the acts committed in violation of this section
(3) or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and
(4) if death results from the acts committed in violation of this section
(5) or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse,
(6) or an attempt to commit aggravated sexual abuse,
(7) or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

weapon, explosives, or fire" under the second clause of the statute, there are two different offenses contained in the second clause of § 242 and the Government was required to prove one of them beyond a reasonable doubt in order to increase the statutory maximum.[6] *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

At the January 24, 2018 hearing, the Government agreed that "bodily injury result[ed]" and that "the acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire" are elements. *See* Jan. 24, 2018 Hr'g Tran. at 12. The Government simply stated that it need not prove both that "bodily injury result[ed]" and that "the acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire." *See id.* at 11. This is true. However, this does not mean that the second clause of § 242 contains only one offense. In fact, as the Government concedes, "bodily injury result[ed]" and that "the acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire" are elements. *See id.* at 11. Thus, the second clause of § 242 contains two different offenses. *See Mathis*, 136 S.Ct. at 2249 ("A single statute may list elements in the alternative, and thereby define multiple crimes.").

    ii.    <u>Officer Brown was Convicted of the Bodily Injury Offense.</u>

Because the statute is divisible, the Court must use the modified categorical approach to determine what was Officer Brown's crime of conviction. *See Mathis*, 136 S.Ct. at 2249 ("[T]his

---

[6] The Civil Rights Division's website also suggests that there are seven different offenses contained in § 242. <u>Law Enforcement Misconduct</u>, Dep't of Justice, https://www.justice.gov/crt/statutes-enforced-criminal-section ("A violation of [§ 242] is a misdemeanor, unless prosecutors prove one of the statutory aggravating factors, such as a bodily injury, use of a dangerous weapon, kidnapping, aggravated sexual abuse, death resulting, or attempt to kill.").

8

Court approved the 'modified categorical approach' for use with statutes having multiple alternative elements."); Jan. 24, 2018 Hr'g Tran. at 13 ("The modified categorical approach is appropriate."). Under the modified categorical approach, the Court looks to certain documents, including the indictment, jury instructions, and verdict form, "to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S.Ct. at 2249 (citations omitted).

As both parties agree, Officer Brown was convicted of violating the Bodily Injury Offense. The Superseding Indictment referenced both a dangerous weapon and that bodily injury resulted. DE 81 at 2 ("Officer Brown "while acting under color of law and aiding and abetting one another, assaulted J.B. during a traffic stop, by repeatedly striking J.B. with a closed fist, a hand clasping a firearm, feet, and knees, and by electroshocking J.B. with an X26 Taser, a *dangerous weapon*, all of which resulted in *bodily injury*, and thereby willfully deprived J.B. of the right, secured and protected by the Constitution and laws of the United States, to be free from unreasonable seizures by one acting under color of law, in violation of Title 18, United States Code, Sections 242 and 2") (emphasis added). The Government, however, stated that it only indicted Officer Brown under the "bodily injury resulting" theory and not under the "dangerous weapon" theory. Jan. 24, 2018 Hr'g Tran. at 21 ("[W]e didn't charge that a dangerous weapon was used.").

This was reflected in the jury instructions and verdict form. The jury instructions only instructed the jury on the additional element of bodily injury. *See* DE 155 at 16 (stating that the fourth element is "[t]hat the offense resulted in bodily injury to J.B."); *id.* at 21 (defining bodily injury). The jury verdict form only required the jury to make a finding about whether Officer Brown's violation of § 242 resulted in bodily injury. *See* DE 161 at 1. Neither the jury instructions nor the verdict form required the jury to make any determination about whether Officer Brown used, attempted to use, or threatened the use of a dangerous weapon, explosives, or fire. Thus,

9

Officer Brown was convicted of a violation of § 242 that resulted in bodily injury, the Bodily Injury Offense.[7] The Court must next determine whether the Bodily Injury Offense is a crime of violence under either the use-of-force or the risk-of-force clause of § 924(c)(3).

    iii.    <u>The Bodily Injury Offense is Not a Crime of Violence Under the Use-of-Force Clause.</u>

The use-of-force clause states that a crime of violence is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A). For a statute to qualify as a crime of violence under the use-of-force clause, the Court "must ask whether the crime, in general, plausibly covers any non-violent conduct. Only if the plausible applications of the statute of conviction *all* require the use or threatened use of force can [the defendant] be held guilty of a crime of violence." *McGuire*, 706 F.3d at 1337 (emphasis added). "[U]se requires active employment" of force. *Leocal*, 543 U.S. at 9.

The Bodily Injury Offense does not require the use or threatened use of force in all of its plausible applications. In fact, as Officer Brown points out, defendants have been convicted of violating the Bodily Injury Offenses in cases where "government officers fail to act to protect the safety or medical needs of persons in custody." *See, e.g.*, *United States v. Pendergrass*, 648 F. App'x 29, 31–33 (2nd Cir. 2016) (upholding prison guard's conviction of the Bodily Injury Offense for deliberate indifference to the serious medical need of a prisoner who had ingested a

---

[7] The Court recognizes that the jury found that Officer Brown used a firearm in connection with Count Two. *See* DE 155 at 22 (instructing that the second element of Count Two is "[t]hat during and in relation to that violent crime [charged in Count One], the Defendant knowingly used a firearm."). However, this finding can have no impact on the Court's analysis of whether the crime with which Officer Brown was in fact indicted in Count One—the Bodily Injury Offense—is a crime of violence. To find otherwise would violate Officer Brown's right to be tried by indictment. *See* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.").

10

ball of soap); *United States v. Lanham*, 617 F.3d 873, 885–86 (6th Cir. 2010) (upholding prison guards' convictions of the Bodily Injury Offense for failing to protect a prisoner from violence at the hands of other prisoners); *United States v. Sharma*, 394 F. App'x 591, 592–93 (11th Cir. 2010) (upholding prison guard's conviction of the Bodily Injury Offense for intentionally moving prisoner into a cell anticipating the prisoner would be assaulted). As these examples demonstrate, convictions under the Bodily Injury Offense can be predicated on omissions or non-violent actions and do not require the active employment of force. Thus, because all of the applications of the Bodily Injury Offense do not require the use or threatened use of force, the Bodily Injury Offense is not a crime of violence under the use-of-force clause.

    iv.    <u>The Bodily Injury Offense is Not a Crime of Violence Under the Risk-of-Force Clause.</u>

The risk-of-force clause states that a crime of violence is a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B). For a statute to qualify as a crime of violence under the risk-of-force clause, the Court must "ask if the 'ordinary,' rather than the hypothetical and 'unusual,' violation of the statute at issue qualifies as a crime of violence." *United States v. Keelan*, 786 F.3d 865, 871 (11th Cir. 2015). The Supreme Court has noted that the risk-of-force clause "does not encompass all offenses which create a 'substantial risk' that injury will result from a person's conduct. The 'substantial risk' in § 16(b) relates to the use of force, not to the possible effect of a person's conduct." *Leocal*, 543 U.S. at 10 n.7.

The Eleventh Circuit has provided limited guidance on how district courts should determine if the "ordinary" case meets the definition of a crime of violence under the risk-of-force clause. Other circuits have provided some guidance. The Ninth Circuit stated that "[t]o characterize an ordinary case in the absence of detailed statistical information that is unlikely to be available,

11

the best we can do is use common sense and experience and look to persuasive authority from other courts that have considered whether similar statutes qualify as crimes of violence." *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 856 (9th Cir. 2013) (citations omitted). The First Circuit stated that district courts may disregard hypothetical cases but that they do not have a "license to ignore actual cases on the ground that they are not typical or do not represent the majority of convictions." *United States v. Fish*, 758 F.3d 1, 13 (1st Cir. 2014) (citations omitted).

As discussed above, there have been prosecutions under the Bodily Injury Offense for actions that do not involve the active employment of the use of force. The Civil Rights Division's website notes that its "investigations most often involve alleged uses of excessive force, but also include sexual misconduct, theft, false arrest, and deliberate indifference to serious medical needs or a substantial risk of harm to a person in custody." Law Enforcement Misconduct, Dep't of Justice, https://www.justice.gov/crt/law-enforcement-misconduct. The relevance of this quote is limited because it discusses the Division's prosecutions under § 242 generally, rather than under the Bodily Injury Offense. It does suggest, however, that the Division does not view prosecutions for non-violent conduct, such as deliberate indifference to serious medical needs or a substantial risk of harm to a person in custody, as unusual violations of the statute. *See Keelan*, 786 F.3d at 871. Because the ordinary case, as demonstrated by prior prosecutions, does not "by its nature, involve[] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," § 924(c)(3)(b), the Bodily Injury Offense is not a crime of violence under the risk-of-force clause.

   v. <u>The Government Relied on Cases That Do Not Support its Argument that the Bodily Injury Offense Alone is a Crime of Violence.</u>

In a string cite without explanation, the Government relies on four cases from other circuits that it argues prove that "[a] violation of Section 242 that is charged under the second clause, as

the Defendant was charged in this case, is a crime of violence." DE 214 at 8. However, as explained below, none of these cases persuade the Court that the Bodily Injury Offense *alone* is a crime of violence.

In two cases cited by the Government, the defendants were convicted only of the Dangerous Weapon Offense, not the Bodily Injury Offense. In *United States v. Acosta*, 470 F.3d 132 (2nd Cir. 2006), the defendant was indicted under the Dangerous Weapon Offense, *see* DE 191-4, and the Second Circuit's analysis only dealt with whether the Dangerous Weapon Offense was a crime of violence, *see* 470 F.3d at 135–36 ("[T]he use of a gun by a police officer to rob and intimidate suspected drug dealers, therefore, violates § 242's prohibition on 'the use, attempted use, or threatened use of a dangerous weapon' in the course of willfully depriving a person of his constitutional rights under color of law. . . . Consequently, no error occurred when Acosta's conviction under the second clause of § 242 served as a predicate crime of violence supporting his conviction under § 924(c)."). At the January 24, 2018 hearing, the Government argued that a footnote in *Acosta* supports its position that the Bodily Injury Offense is a crime of violence. *See* Jan. 24, 2018 Hr'g Tran. at 42–44. The Second Circuit in *Acosta* stated "[w]e express no opinion as to whether conduct that is prohibited by the first clause of § 242, but does not involve "bodily injury" or "the use, attempted use, or threatened use of a dangerous weapon," necessarily qualifies as a crime of violence under either § 924(c)(3)(A) or (B)." *Acosta*, 470 F.3d 132 at 136 n.2. Just as the Court in *Acosta* did not express an opinion about whether the first clause of § 242 alone constitutes a crime of violence, neither did it analyze whether the Bodily Injury Offense alone constitutes a crime of violence. As already noted, the only issue before the Second Circuit was whether a conviction for the Dangerous Weapon Offense constitutes a crime of violence. *See id.* at 135–36.

Similarly, in *United States v. Rodella*, 804 F.3d 1317 (10th Cir. 2015), the jury only found the sheriff-defendant guilty of the Dangerous Weapon Offense, although he was charged under both the Bodily Injury Offense and the Dangerous Weapon Offense. *See* DE 216-1; 804 F.3d at 1324 ("[I]n considering the unreasonable force theory, the jury found beyond a reasonable doubt that Rodella used or threatened to use a dangerous weapon, but did not find beyond a reasonable doubt that Rodella caused . . . [the victim] to suffer bodily injury.") (citation omitted).[8] Additionally, it is unclear if the defendants in *Rodella* or in *United States v. Brown*, 250 F.3d 580 (7th Cir. 2001), which the Government cites, raised the issue of whether their § 242 convictions were crimes of violence because the opinions do not provide any analysis of whether § 242 is a crime of violence under § 924(c)(3). Thus, *Acosta*, *Rodella*, and *Brown* do not provide support for the Government's position that the Bodily Injury Offense is a crime of violence.

Finally, the Government cites to *United States v. Williams*, 343 F.3d 423 (5th Cir. 2003). In *Williams*, a deputy sheriff shot the victim, 343 F.3d at 430, and was indicted under both the Bodily Injury Offense and the Dangerous Weapon Offense, *see* DE 199-1. The Fifth Circuit concluded that "the second clause of § 242 . . . is unquestionably a 'crime of violence.'" 343 F.3d at 433. In a footnote, the Fifth Circuit stated that "'[c]ausing bodily injury necessarily includes the

---

[8] At the hearing, the Government pointed to the verdict form in *Rodella* as evidence that a conviction solely for the Bodily Injury Crime could serve as a predicate crime of violence under § 924(c). Jan. 24, 2018 Hr'g Tran. at 80–81. The Government's argument is based on a misreading of the verdict form. The verdict form required the jury to answer two special interrogatories: one relating to a finding that bodily injury resulted and one relating to whether the defendant "used or threatened to use a dangerous weapon." *United States v. Rodella*, No. 1:14-cr-02783-JB, ECF No. 127 (D.N.M. Sep. 26, 2014). The jurors were instructed that if they answered yes to either of these questions, then they were to find the defendant guilty of Count One, the violation of § 242. There was no instruction on the verdict form regarding under what circumstances the jurors could move on to Count Two, the violation of § 924(c). *Id.* Moreover, the verdict form provides no guidance to this Court as the jury found the defendant guilty only of the Dangerous Weapon Offense, *id.*, and the Tenth Circuit did not analyze whether a conviction under § 242 is a crime of violence, *Rodella*, 804 F.3d at 1324.

element of use of physical force.' *United States v. Shelton*, 325 F.3d 553, 555 (5th Cir. 2003)." *Id.* at 432 n.5. This conclusion, however, has been called into question by subsequent Supreme Court and Fifth Circuit decisions. *Shelton*, the sole case on which the Fifth Circuit relied for the proposition that the Bodily Injury Offense is a crime of violence, dealt with an interpretation of 18 U.S.C. § 922(g)(9), which makes unlawful the possession of a firearm by someone who has been convicted of a "crime of domestic violence." As the Supreme Court instructed in *United States v. Castleman*, 134 S.Ct. 1405 (2014), the amount of force required to satisfy the definition of a crime of domestic violence is lower than the amount of force required to satisfy the definition of crime of violence. *See* 134 S.Ct. at 1411 ("[W]hereas the word violent or violence standing alone connotes a substantial degree of force, that is not true of domestic violence.") (citation omitted).

Moreover, in *United States v. Villegas-Hernandez*, 468 F.3d 874 (5th Cir. 2006), the Fifth Circuit explicitly questioned whether *Shelton* and its determination that "[c]ausing bodily injury necessarily includes the element of use of physical force" remains good law in the Fifth Circuit. The Fifth Circuit stated:

> This court had previously held that an assault offense under section 22.01(a)(1) "has, as an element, the use ... of physical force" under 18 U.S.C. § 921(a)(33)(A)(ii) so as to meet that section's definition of "misdemeanor crime of domestic violence" and thus constitute a predicate offense for purposes of 18 U.S.C. § 922(g)(9). *See United States v. Shelton,* 325 F.3d 553, 557, 561 (5th Cir. 2003)(stating that "because" Texas Penal Code § 22.01(a)(1) "requires bodily injury it includes as an element the use of physical force"). In *Shelton,* a panel of this court relied largely on the panel opinion in *United States v. Vargas-Duran,* 319 F.3d 194 (5th Cir. 2003). *Shelton,* 325 F.3d at 558, 561. The *Vargas-Duran* panel had concluded that Texas's intoxication assault offense, Texas Penal Code § 49.07, included use of force as an element by virtue of its requirement of causation of serious bodily injury and was hence a crime of violence under U.S.S.G. (2001) § 2l.1.2(b)(1)(A)(ii), note 1(B)(ii)(I) (stating definition almost identical to section 16(a)). *Vargas-Duran,* 319 F.3d at 196. After *Shelton,* however, *Vargas-Duran* was taken en banc. 336 F.3d 418 (5th Cir. 2003). In the *en banc* opinion we held the opposite.

468 F.3d at 880. Thus, *Williams* does not inform this Court as to whether a conviction solely for

15

the Bodily Injury Offense is a crime of violence.

    vi.    <u>The Rule of Lenity Requires Finding that the Bodily Injury Offense is Not a Crime of Violence.</u>

The rule of lenity also requires the Court to find that the Bodily Injury Offense is not a crime of violence under § 924(c)(3). "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008). Any "lack[] of clarity" as to whether a defendant's conviction qualifies as a crime of violence must be resolved in the defendant's favor. *See Leocal*, 543 U.S. at 11 n.8; *Van Don Nguyen v. Holder*, 571 F.3d 524, 525 (6th Cir. 2009) (holding that "the theft of an automobile under the California grand theft statute is not a 'crime of violence' under 18 U.S.C. § 16(b)" because "the statute in question regarding the 'crime of violence,' as well as the California auto theft statute, is ambiguous and our decision must take into account the 'rule of lenity'").

Because the Court cannot unambiguously find that the Bodily Injury Offense is a crime of violence under either the use-of-force clause or the risk-of-force clause, the Court must find in favor of Officer Brown.

    vii.    <u>Conclusion</u>

The Bodily Injury Offense is not a crime of violence under § 924(c)(3) and could not serve as a predicate offense for Officer Brown's conviction for a violation of § 924(c). Officer Brown's conviction under Count Two, therefore, must be vacated and judgment of acquittal entered.

### III.    CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that:

1. Officer Brown's Motion for Judgment of Acquittal [DE 190, 191] is **GRANTED IN PART AND DENIED IN PART;**

2. Judgment of Acquittal as to Count Two will be entered in separate order;

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 25th day of January, 2018.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE