UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:17-cr-80102-ROSENBERG

UNITED STATES OF AMERICA,

    v.

MICHAEL C. BROWN,

    Defendant.

_____/

# ORDER ON THE GOVERNMENT'S OBJECTION TO ORDER SUSTAINING OFFICER BROWN'S LEGAL OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT

**This Cause** is before the Court on the Government's Objection to Order Sustaining Officer Brown's Legal Objection to the Presentence Investigation Report, DE 285, which the Court interprets as a motion for reconsideration of its order on Officer Brown's legal objection to the Presentence Report, DE 278. Officer Brown responded, 286. The Court hereby denies the Government's Objection to its Order Sustaining Officer Brown's Legal Objection to the Presentence Investigation Report.

## I. BACKGROUND

Officer Brown filed objections to the Presentence Investigation Report, which included a legal objection to the Probation Office's determination that Officer Brown's conduct constituted aggravated assault. DE 234 at 4–5. The Government responded. DE 241, 267. The Court held a hearing on February 13, 2018 on the legal and factual objections to the Presentence Report. Following the hearing, the Court issued an order granting Officer Brown's legal objection to the Presentence Report, denying the Government's Objection to the Presentence Report, and granting in part and denying part Officer Brown's factual objections to the Presentence Report.

DE 278. In relevant part, the Court wrote:

> Second, the Government argues that Brown's conduct falls into the aggravated assault Guideline because of his use of a Taser. Some courts have found that a Taser can be a dangerous weapon, *see, e.g.*, *United States v. Quiver*, 805 F.3d 1269, 1272 (10th Cir. 2015), and Officer Brown conceded that a Taser can be a dangerous weapon, Feb. 13, 2018 Hr'g Tran. at 38. At trial, Sergeant Sedrick Aiken, the Government's use of force expert testified that, per Boynton Beach Police Department policy, an officer may only use a Taser when faced with active resistance, not when faced with passive resistance. Trial Tran., Nov. 2, 2017, at 78–80. Sergeant Aiken testified that, based on the level of resistance Officer Brown described in his reports, he faced passive resistance from J.B. and was not permitted to use a Taser per policy. *Id.* at 116. However, Sergeant Aiken's testimony does not go to Brown's intent in using the Taser.
>
> Some evidence suggests that Officer Brown used the Taser to gain compliance rather than to cause bodily injury. *See* Test. of Sedrick Aiken, Trial Tran., Nov. 2, 2017, at 244 ("*Q.* Officer Ryan writes: The front passenger, Jeffrey Braswell, refused loud verbal commands to exit the vehicle, all of which were ignored. I attempted to pull Braswell out of the vehicle, however, he pulled back and refused to exit. Braswell continued to reach in between the driver and passenger seat and I had a genuine fear he may be reaching for a weapon – he still refused to exit the vehicle and I pulled him from the prone position where he refused to put his hands behind his back. This is giving you more information about what happened? *A.* Yes. *Q.* Giving you more information why Officer Brown used his Taser? *A.* Right."). Officer Monteith, the only eyewitness who testified, did not testify that he thought the use of the Taser was to cause injury. *See* Trial Tran., Oct. 31, 2017, 223 ("*Q.* What happened after you saw the Taser? *A.* I took a breath, a moment of levity, if you will, and to assess what I am looking at.").
>
> The Government did not provide evidence of when Officer Brown deployed his Taser. The Court recognizes that, because the Taser records are imprecise, the time on the Taser records cannot be matched to real time. Feb. 13, 2018 Hr'g Tran. at 78. Sergeant Aiken testified that it would be difficult for an officer to have both his gun and his Taser in his hands, *id.* at 77; without more *evidence*, not argument, of the sequence of events, the Court is left guessing when Officer Brown holstered his gun and when he deployed his Taser. The sequence of events is important in evaluating Officer Brown's intent in deploying the Taser against J.B.
>
> Additionally, although there was evidence at trial that Brown deployed his Taser, *see* Gov't Exs. 4a, 8d, 9a, there was no evidence that his Taser actually electroshocked J.B. *See* Test. of Robin Eichorst, Trial Tran., Nov. 1, 2017, 146–47.[1] In his report, Officer Brown wrote that he "deployed [his] X 26 Taser

---

[1] *Q.* Do you ever photograph Taser wounds?
*A.* Tender wounds?
*Q.* Taser wounds.

2

striking the subject in the right leg and chest." Gov. Ex. 8d. This could lead to the conclusion that he successfully deployed his Taser against J.B. Test. of Sedrick Aiken, Feb. 13, 2018 Hr'g Tran. at 84. Sergeant Aiken testified that, although the Taser makes a sound when it is deployed successfully, "if we are outside with ambient noise we probably wouldn't be able to hear it." *Id.* at 83. Thus, Officer Brown may not have known whether his Taser was successful. Moreover, Officer Brown reported that he struck J.B. in the right leg and chest. Gov. Ex. 8d. There were no photographs of J.B. introduced at trial or at the hearing that show penetration marks at these spots. *See* Gov.'s Exs. 5g, 5h, 5i, 5j, 5k; Def.'s Exs. B-15, B16. The Court presided over the trial and reviewed the trial transcript. There is insufficient evidence to find by a preponderance of the evidence that Brown's intent in using the Taser was to cause bodily injury, rather than to gain control over J.B.

---

*A.* Yes.
*Q.* Did you photograph Taser wounds on this individual that you know of?
*A.* I don't recall.
*MS. OSBORNE:* May I approach the witness, Your Honor?
*THE COURT:* Yes.
*BY MS. OSBORNE*:
*Q.* I will show you what is marked 5-J.
*MS. OSBORNE:* And there is no objection from defense for it to be entered into evidence.
*THE COURT:* Okay, 5-J is admitted without objection.
(Whereupon Government Exhibit 5-J was marked for evidence.)
*BY MS. OSBORNE*:
*Q.* Do you see these marks here and here? (Indicating)
*A.* Yes, I do.
*Q.* Do you see the individual also has a bandage up there? These are all on the right arm and right shoulder?
*A.* That is correct, and I see the additional wound also on the right arm.
*Q.* Do you recall if these were Taser wounds?
*A.* I don't recall --
*Q.* But you took photos --
*A.* I don't recall.
*Q.* You do not recall taking photographs --
*A.* You are talking about photographs of Taser wounds?
*THE COURT:* Wait, wait. You are talking over each other.
*BY MS. OSBORNE*:
*Q.* Do you recall taking this photograph, 5-J?
*A.* Yes.
*Q.* Is this also a photograph of the individual who is depicted in 5-G? Is that the same person?
*A.* I am assuming it is. I would have to see an individual photograph to see what sequence they were taken in. I believe it is, yes.
*Q.* Okay.

DE 278 at 15–17. In its Objection to Order Sustaining Officer Brown's Legal Objection to the Presentence Investigation Report, the Government raises two arguments: (1) it "objects to the Court's determination that during the hearing the Government did not present sufficient evidence to establish the sequence of events relating to Defendant Brown's deployment of the Taser," and (2) it "requests that the Court not rely upon the hearsay statement of Ronald Ryan with respect to whether the Taser was deployed to cause injury." DE 285 at 1.

## II. MOTION FOR RECONSIDERATION

First, the Court notes that the Government styles its filing as an objection and then requests that the Court overrule Officer Brown's legal objection. The Court, thus, construes the Government's filing as a motion for reconsideration of the Court's Order on Officer Brown and the Government's Objections to the Presentence Investigation Report. DE 278.

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.,* 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002) (citing *Mannings v. Sch. Bd. of Hillsborough Cnty.*, 149 F.R.D. 235, 235 (M.D. Fla. 1993)). "The 'purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* at 1369 (quoting *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)). Only three major grounds generally justify reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citing *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F. Supp. 2d 1316, 1331 (M.D. Fla. 1999)). On the other hand, "[a] 'motion for reconsideration should not be used as a vehicle to . . . reiterate arguments previously made.'" *Id.* (citing *Z.K. Marine Inc.*, 808 F. Supp. at 1563).

The Government's motion does not argue which of the three major grounds for reconsideration its motion satisfies. There has been no intervening change in controlling law, no new evidence is available, and there is no need to correct clear error or prevent manifest injustice. Therefore, the Government's motion is denied for failure to meet the grounds necessary for reconsideration.

III. **ANALYSIS**

Even if the motion was not denied for failing to meet the standard for reconsideration, it would be denied on the merits. First the motion "objects to the Court's determination that during the hearing the Government did not present sufficient evidence to establish the sequence of events relating to Defendant Brown's deployment of the Taser." DE 285 at 1. Second, the Government requests that the Court not rely upon the hearsay statement of Ronald Ryan with respect to whether the Taser was deployed to cause injury.

A. The Government's Objection Regarding the Timeline of the Use of the Taser

The Government makes three arguments in support of its objection that it did not present sufficient evidence to establish the sequence of events relating to Officer Brown's deployment of the Taser: (1) it points to Officer Brown's report, the video, and the Taser records to show the sequence of events relating to Officer Brown's use of the Taser; (2) it states that Sergeant Aiken's testimony shows that Officer Brown was confronted with passive resistance and thus was not allowed to use hard force, including a Taser; and (3) it states that "the fact that Brown tased the passenger is a fact that is, at the least, implicit in the jury's finding that Brown used excessive force against J.B." *Id.* at 3.

With respect to the first argument regarding the sequence of events, the Court does not disagree that Officer Brown kicked, punched, and then tased. However, it does not follow

5

necessarily that Officer Brown's use of the Taser was with intent to cause bodily injury with the Taser, as is required for the use of the Taser to serve as the basis for finding that Officer Brown committed aggravated assault. *See* U.S.S.G. § 2A2.2 (defining aggravated assault as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (*i.e.*, not merely to frighten) with that weapon"). The Court's point in noting that the Government did not fully explain the timeline was to show how the Government—in arguing that both the gun and the Taser were used by Officer Brown in the same very short period of time—never explained when Officer Brown holstered his gun and when he deployed his Taser. This fact was important to the Court, considering Sergeant Aiken's testimony that it would be difficult for an officer to have both a Taser and a gun in his hands. Feb. 13, 2018 Hr'g Tran. at 76–77.[2] Moreover, the mere fact that Officer Brown used his Taser after punching and kicking does not mean that Officer Brown used it with the intent to cause bodily injury to J.B.

Second, the Government states that Sergeant Aiken's testimony shows that Officer Brown was confronted with passive resistance and thus was not allowed to use hard force, including a Taser. The Court recognized this in its Order: "Sergeant Aiken testified that, based on the level of resistance Officer Brown described in his reports, he faced passive resistance from J.B. and was not permitted to use a Taser per policy. *Id.* at 116." DE 278 at 15. A violation of Boynton Beach Police Department Policy with respect to when an Officer can use a Taser

---

[2] *THE COURT:* I do have one question.
It might be self-evident, but can an officer hold both a taser and a gun at the same time in the same hand?
*THE WITNESS:* You can do it, but the situation would be -- I would have to draw a taser and transition it to the left hand and pull my firearm out, unless you are flexible enough to reach down in a backwards motion to pull your taser out. The holster we carry the taser in, you have to use your index finger to unlock the motion, you can't grab it with your support hand. You could do it, but I'd have to take this hand, draw the taser and draw the support hand.
*THE COURT:* Is that consistent with the training?
*THE WITNESS:* No.

6

does not prove that Officer Brown intended to use the Taser to cause bodily injury with the Taser.

Third, the Government states that "the fact that Brown tased the passenger is a fact that is, at the least, implicit in the jury's finding that Brown used excessive force against J.B." DE 285 at 3. This is not true. The jury did not make a finding that Officer Brown tased J.B. The Superseding Indictment as to Count One reads that Michael Brown:

> while acting under color of law and aiding and abetting one another, assaulted J.B. during a traffic stop, by repeatedly striking J.B. with a closed fist, a hand clasping a firearm, feet, and knees, and by electroshocking J.B. with an X26 Taser, a dangerous weapon, all of which resulted in bodily injury, and thereby willfully deprived J.B. of the right, secured and protected by the Constitution and laws of the United States, to be free from unreasonable seizures by one acting under color of law, in violation of Title 18, United States Code, Sections 242 and 2.

DE 81 at 1. The Superseding Indictment listed several different means by which Officer Brown could have used unreasonable force. In finding Brown guilty of Count One, the jury did not identify which of the means stated in the Superseding Indictment they found to be excessive force. The verdict form did not have a special interrogatory requiring the jury to identify which means used by Officer Brown were excessive. *See* DE 161. Therefore, there is no jury finding that Officer Brown used his Taser. Moreover, there is no dispute that Officer Brown *deployed* his Taser. *See* Gov't Exs. 4a, 8d, 9a. The Court simply stated that the Government presented insufficient evidence to prove that Officer Brown in fact *electroshocked* J.B. *See* DE 278 at 16–17.

B. <u>The Government's Request that the Court Not Rely on Officer Ryan's Report</u>

In its motion, the Government "requests that the Court not rely upon hearsay statements of Ronald Ryan with respect to whether the Taser was deployed to cause injury." DE 285 at 1. "A sentencing court may consider reliable hearsay in determining a defendant's sentence."

*United States v. Broxton*, 295 F. App'x 339, 341 (11th Cir. 2008) (citing *United States v. Baker*, 432 F.3d 1189, 1253–54 & n. 68 (11th Cir. 2005)); *see also* U.S.S.G. § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.") The Court found that Officer Ryan's report had sufficient indicia of reliability; thus, it was appropriate for the Court to cite to Officer Ryan's report, along with the testimony of Officer Monteith, in stating that "some evidence suggests that Officer Brown used the Taser to gain compliance rather than to cause bodily injury." DE 278 at 15. The Court notes that Officer Ryan was acquitted of charges that he falsified his reports. *See* DE 161. Therefore, the Court denies the Government's request that it not rely on Officer Ryan's report.

## IV.    CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that the Government's Objection to Order Sustaining Officer Brown's Legal Objection to the Presentence Investigation Report, DE 285, which the Court interprets as a motion for reconsideration of its order on Officer Brown's legal objection to the Presentence Report, DE 278 is **DENIED**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 26th day of February, 2018.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE